**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **UNITED STATES OF AMRERICA**<br>**Plaintiff** | ) | **CASE NO. 5:24-CR-00403-002** |
| | ) | |
| **Vs.** | ) | **JUDGE SARA LIOI** |
| | ) | |
| | ) | |
| **AUSTIN D. HOTTINGER**<br>**Defendant** | ) | **DEFENDNAT'S SENTENCING MEMORANDUM** |

Now comes Defendant, Austin D. Hottinger, by and through counsel, submits this Sentencing Memorandum. A sentence date of February 11, 2026, at 10:00 am. has been scheduled.

Respectfully Submitted,

/s/ *Erik Jones*
Erik Jones, Esq. (#0075418)
137 South Main Street, Suite 104
The Delaware Building
Akron, Ohio 44308
Phone (234) 208-5020
erik@erikejoneslaw.com
*Attorney for Defendant Austin D. Hottinger*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of February 2026, a copy of the foregoing filed electronically, notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

Respectfully Submitted,

*/s/ Erik Jones*

Erik Jones, Esq. (#0075418)
137 South Main Street, Suite 104
The Delaware Building
Akron, Ohio 44308
Phone (234) 208-5020
erik@erikejoneslaw.com
*Attorney for Defendant Austin D. Hottinger*

# MEMORANDUM

## A. Procedural History

On December 19th, 2024, the Defendant, Austin D. Hottinger was charged with one count of Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Austin pled not guilty. Discovery was demanded and provided. On October 30th, 2025, Austin pled guilty to the sole count of the indictment pertaining to him. A Presentence Interview was conducted on

His PSR interview was conducted on November 24, 2025.

## B. Defendant Austin Hottinger's Personal History and Characteristics

### I. Early Childhood

Austin agrees with paragraphs 71 through 73 of the PSR. However, it is important to emphasize and highlight some of the information provided therein.

His upbringing was unconventional. His father abandoned the family and very little to no contact with Austin. Austin was raised by his mother and maternal grandmother. He reported that his mother suffered from severe drug addiction. When Austin was sixteen, his mother caught him consuming methamphetamine and instead of an appropriate parental response, she then took the opportunity to join him and consume methamphetamine with him. His mother informed the PSR writer that Austin began developing anger issues at a young age which she attributed to his father's abandonment. She further stated that their family has a history of mental illness.

### II. Personal Relationships

Austin is not married or in a committed relationship. He has one child, a 4-year-old son Anthony Conley, but has little contact with him due to his incarceration,

### III. Gang Affiliation

Austin admits to the Court and the PSR writer that he is a member of the Gangster Disciples street gang.

### IV. Medical Health and Physical Condition

Ausitn's medical issues are multifaceted and is accurately outlined in paragraph 79

of the PSR.

**V. Mental Health**

Austin's mental health issues began emerging at a very young age. Anger and ADHD were diagnosed early on and Austin engaged in self-harm as a youth. This unfortunately followed Ausitn into early adulthood as he attempted suicide by hanging at the age of twenty-one, and again by overdosing on Fentanyl at the age of twenty-seven. Sadley, just as recently as November 10th, 2025, Austin was placed on suicide watch at NEOCC due to his self-harming behavior. Ausitn has been diagnosed with the following disorders: Unspecified mood disorder, Severe amphetamine use disorder, Cocaine use disorder, and Alcohol use disorder.

**VI. Education**

Austin did not graduate from high school but obtained his G.E.D.

**VII. Military Service**

Austin is not and has not been a member of the armed forces.

**VIII. Employment History**

Austin has not been employed due to his incarceration.

**IX. Substance Abuse History**

Austin has used Fentanyl, Methamphetamine, LSD, Suboxone and Alcohol. It is obvious and unquestionable that his substance use, abuse and addiction have greatly and negatively impacted his life. He has been expelled from school for drug use, lost employment from drug use and has engaged in criminal activity due to his drug use.

**C. Factual Basis and Criminal Conduct**

Austin was detained in the Summit County Jail and made the acquaintance of codefendant Matthew Anderson. Matthew Anderson brought up the prospect of stealing money from the North Side Saloon where Mr. Anderson's ex-girlfriend worked. Austin called codefendant Isaiah Hopkins from the Summit County jail. Austin, Mr. Hopkins, and Mr. Anderson all discussed and planned for Mr. Hopkins to rob the North Side Saloon. The extent of Austin's criminal conduct is limited to telephonic communication

planning a theft that was placed on October 29, 2024. That plan was subverted by law enforcement and never came to fruition. All other counts of the indictment and all other allegations, do not apply to Austin, including paragraphs 17 through 20 of the PSR.

**D. Summit County Case Number CR 2023-11-3707(A)**

Austin is presently subject to an Ohio prison sentence from the Summit County Court of Common Pleas. On December 23, 2024, Austin pled guilty to Conspiracy To Commit Murder, in violation of Ohio Revised Code §§ 2923.01(A)(1), 2903.02(A), 2903.02(D), 2929.02(B), a felony of the first degree with a three-year firearm specification pursuant to Ohio Revised Code § 2941.145(A). All other counts were dismissed. On April 15, 2025, Austin was sentenced to an indefinite term of incarceration in the Ohio Department of Rehabilitation and Corrections for a minimum period of 8 years and a maximum period not to exceed 10½ years. Austin was admitted to ODRC on May 1, 2025, to the Toledo Correctional Institute with inmate number A821982. A writ was executed to bring Austin to NEOCC to answer the indictment in this matter.

**E. Sentencing Analysis**

**I. Criminal History**

Austin has a criminal history score of twenty-six, putting him in Criminal History Category VI. He has no other criminal conduct, no other pending charges and no other arrests.

**II. Offense Level**

Section §2B3.1(a) of the United States Sentencing Guidelines imposes an offense level of twenty. There are no specific offense characteristic enhancements, no role in the offense adjustments, no adjustment for obstructing justice, no Chapter Four enhancements and no other offense behavior not part of his relevant conduct present.

**III. Acceptance of Responsibility**

Austin accepts responsibility for his actions that are the factual basis for the indictment in this matter and therefore he is eligible for a three-level decrease of the offense level.

**IV. The Guidelines are only a starting point**

The United States Sentencing Guidelines are the starting point for federal sentencing. A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. *Gall v. United States*, 128 S. Ct. 586, 595 (2007).

**V. The Guidelines are not mandatory**

The sentencing judge may hear arguments by prosecution or defense that the Guidelines should not apply. *Rita v. United States,* 127 S. Ct. 2456, 2465 (2007). Those arguments may be that the case falls outside the "heartland" and thus warrants a departure, or that the guidelines range "fails properly to reflect § 3553(a) considerations," or simply that "the case warrants a different sentence regardless." *Rita* at 2465. A sentencing court may not apply "a legal presumption that the Guidelines sentence should apply." *id*. Moreover, a sentencing court "may not presume . . . that the Guidelines range is reasonable." *Gall* at 596-97.

**VI. The Guidelines are only advisory**

The Guidelines are advisory and courts may vary from Guidelines ranges. *Kimbrough v. United States*, 128 S. Ct. 558. Additionally, district courts may find that the Guidelines sentence itself fails properly to reflect § 3553(a) considerations. *Rita* at 2469. Moreover, the Sixth Circuit has recognized all of the sentencing guidelines are advisory. *United States v. Michael*, 576 F.3d 323, 327 (6th Cir. 2009).

**VII. The Guidelines are only one factor to consider**

The Guidelines are to be treated as one factor among several to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough* at 563. Guideline ranges are not mandatory or presumptive, *Gall* at 597; *Nelson v. United States*, 555 U.S. 350, 352 (2009).

**VIII. Sentencing Courts possess inherent authority and discretion**

*Rita* provides that a sentencing court's authority to disregard guideline recommendations extends beyond the individual facts of a case. A party may rely on

individual characteristics or circumstances, arguing that "the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply." *Rita* at 2465. Or said otherwise, that the Guidelines "do not generally treat certain defendant characteristics in the proper way." *Rita* at 2468. In addition, a party can argue that a non-guideline sentence is appropriate "because the Guidelines sentence itself fails properly to reflect the §3553(a) considerations," and thus "reflects an unsound judgment." *Rita* at 2465.

Federal district judges have significant discretion to impose sentences below (or above) those called for under the Sentencing Guidelines. *United States v. Booker,* 125 S. Ct. 738 (2005); *Spears v. United States*, 129 S. Ct. 840 (2009). Instead, after determining the Guideline range, the sentencing court may decide that a sentence in that range:

> should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "Heartland" to which the Commission intends individual Guidelines to apply, U.S.S.G. § 5K2.O, perhaps because the Guidelines sentence itself fails properly to reflect §3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f).

*Rita* at 2465. District courts may even consider arguments that a particular guideline reflects an unsound judgment. *Rita* at 2468; *Spears* at 843.

**IX. Concurrent Sentencing**

Judges have traditionally had broad discretion in selecting whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings, see *Oregon* v. *Ice*, 555 U.S. 160, 168-169, 129 S. Ct. 711, 172 L. Ed. 2d 517. Whether a sentence is to run consecutive to or concurrent with a state sentence is a question left to the district court's discretion. *United States v. Johnson,* 553 F.3d 990, 997 (6th Cir. 2009).

This is because federal sentencing law gives district courts discretion to make a sentence concurrent with "an undischarged term of imprisonment." *United States v. Gibbs*, 626 F.3d 344, 349-50 (6th Cir. 2010). This discretion comes from 18 U.S.C. § 3584

which permits qualifying defendants—those "already subject to an undischarged term of imprisonment"—to receive a "concurrent sentence". *Gibbs* and § 3584(a). § 3584(b) instructs "[t]he court, in determining whether [prison] terms imposed are . . . to run concurrently or consecutively, [to] consider the factors set forth in [18 U.S.C. §] 3553(a)." 18 U.S.C. § 3584(b). Section 3553(a)(5) requires sentencing courts to consider any applicable policy statements in the Guidelines.

District court should turn their attention to" U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 5G1.3 in determining what type of sentence to impose. *Johnson,* 553 F.3d at 998. USSG §5G1.3 describes three circumstances that justify a concurrent sentence. *See* U.S.S.G. § 5G1.3(b) and (d).

Austin respectfully requests that any sentence tendered by this Court be ordered to run concurrent and not consecutive to his present state prison sentence.

**X. The Goal of Federal Sentencing**

*United States v. Booker*, 543 U.S. 220 (2005) impacted a sentencing court's ability to sentence outside the guideline range and reiterated that 18 U.S.C. § 3553(a) provides the remaining criteria for determining the sentence. *Booker* at 259. Further, it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. *Gall* at 598.

Treating the Guidelines as advisory requires that the Court consider the guideline range calculation is merely one of many factors in determining a sentence no greater than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a)(2). See *Gall* at 597; *Kimbrough* at 570. The overriding principle and mandate of §3553(a) requires district courts to impose a sentence "sufficient, but not greater than necessary," to achieve the four purposes of sentencing as set forth in §3553(a)(2): (a) retribution; (b) deterrence; (c) incapacitation; and (d) rehabilitation.

The "sufficient but not greater than necessary" requirement has been referred to

as the "parsimony provision." See *United States v. Denardi*, 892 F.2d 269, 276-77 (3rd Cir. 1989). The Sixth Circuit has found that the parsimony provision serves as "the guidepost for sentencing decisions post-Booker" and sets an independent limit on the sentence a court may impose. *United States v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006). Since §3553(a) requires a sentence to be no greater than necessary to meet the four purposes of sentencing, imposition of a sentence greater than necessary to meet those purposes is reversible, even if within the applicable guideline range. *Id.*

**XI. 18 U.S.C. § 3553**

Judges are directed to consider the factors set forth in § 3553. Under the terms of the statute, judges must consider the guidelines in order to glean from them the benefit of any advice they may offer for how best to achieve the statutory goals. In this consideration, there can be no thumb on the scales for the guidelines. *Gall* at 602; *Kimbrough* at 564, 570.

In determining the sentence minimally sufficient to comply with the §3553(a)(2) purposes of sentencing, the court must consider several factors listed in §3553(a). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed -
  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
  (B) to afford adequate deterrence to criminal conduct;
  (C) to protect the public from further crimes of the defendant; and
  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the advisory guideline range;
(5) any pertinent policy statements issued by the Sentencing Commission;
(6) the need to avoid unwarranted sentence disparities; and
(7) the need to provide restitution to any victims of the offense.

See, 18 U.S.C. §3553(a) (2007).

While district courts must in all cases "consider" the guideline range, the Guidelines do not subordinate the other factors in §3553(a). *See Booker*, 125 S. Ct. 738. The Sixth Circuit has held that the sentencing mandate under §3553(a) serves as the guidepost for sentencing decisions post-Booker, and the Guidelines carry no more weight than any other factor under §3553(a). *U.S. v. Ferguson*, 456 F.3d 660, 667 (6th Cir. 2006).

**XII. New Federal Sentencing Guidelines**

The Federal Sentencing Guidelines were established in 1987 by the United States Sentencing Commission ("USSC") to promote consistency and fairness in sentencing. These guidelines provide a framework for judges to determine appropriate sentences for federal offenses, considering factors such as the severity of the crime and the defendant's criminal history.

Effective November 1, 2025, "departures" (guideline-based deviations) were eliminated and replaced with a streamlined process focused on "variances," allowing judges to sentence outside the guideline range based on statutory factors (18 U.S.C. § 3553(a)). This change moves away from specific departure grounds, making sentencing more outcome-neutral by incorporating those factors into the broader variance analysis, aiming for greater uniformity while preserving judicial discretion for individual cases.

The elimination of departures reflects a shift towards greater uniformity in sentencing. Under the new updated guidelines, judges will consider variances that do not require a guidelines-sanctioned basis; they stem from judicial authority under *Booker* and its progeny and considerations of 18 U.S.C. § 3553(b)(1) factors (*e.g., Irizarry v. United States*, 553 U.S. 708 (2008)).

Judges begin by identifying the base offense level for the crime, as outlined in the guidelines. This step ensures that the severity of the offense is accurately reflected in the sentencing range.

Next, judges apply any relevant adjustments, such as enhancements for aggravating factors (*e.g.,* use of a firearm) or reductions for mitigating factors

(*e.g.,* acceptance of responsibility). These adjustments are designed to account for the specific circumstances of the case.

Finally, judges may consider variances based on statutory factors, such as the nature and circumstances of the offense and the history and characteristics of the defendant.

With a CHC IV and an adjusted offense level of 17, Austin is subject to an advisory guideline range of 51 to 63 months. The PSR writer indicates that there are no identifiable grounds for varying from the guidelines.

**E. Conclusion**

In Austin's case the minimum sentence within the guideline range is 51 months. As stated earlier, Austin requests that this sentence be ordered to run concurrent with his eight to ten and ½ year state prison sentence. Fashioning a sentence in such a manner is sufficient but not greater than necessary to comply with the basic objectives, including the need for just punishment, deterrence, protection of the public, and rehabilitation.

This Court has the authority and discretion to tender such a sentence.

The "no greater than necessary" reference in the introductory clause of subsection 3553(a) means that "if a district court were to conclude that two sentences equally served the statutory purpose of §3553, it could not ... impose the higher. *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010).

Applying the Sentencing factors in §3535(a)(2), this Court can fashion a sentence which will balance the need for incarceration relative to the seriousness of his conduct. Austin did not impede or obstruct justice. He has accepted responsibility for his actions. He has conducted himself appropriately under pretrial supervision with only one violation. Austin understands that he will be going to prison on this charge, but he has fashioned a plan to hopefully obtain his Commercial Drivers License while incarcerated so that he may be gainfully employed upon release.

Austin's case presents precisely the type of factors that should be considered by the courts after *Booker*. The succession of cases after *Booker*, including *Rita*, *Gall*,

*Kimbrough*, and *Spears*, all demonstrate that this court has the authority and duty to consider the above-mentioned factors when arriving at a sentence that fulfills the sentencing mandate of §3553.

Respectfully Submitted,

/s/ *Erik Jones*
Erik Jones, Esq. (#0075418)
137 South Main Street, Suite 104
The Delaware Building
Akron, Ohio 44308
Phone (234) 208-5020
erik@erikejoneslaw.com
*Attorney for Defendant Austin D. Hottinger*